UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
BP PRODUCTS NORTH AMERICA INC.        :
                                      :
                                      :
Plaintiff,                            :        20cv9659 (DLC)
                                      :
            -v-                       :        OPINION AND ORDER
                                      :
BLUE HILLS FUELS, LLC, PMG NORTHEAST, :
LLC, and WESTWARD SERVICE STATION     :
INC.,                                 :
                                      :
                     Defendants.      :
                                      :
------------------------------------- X

APPEARANCES:

For plaintiff:
Abby Risner
Zackary G. Smith
Greensfelder, Hemker, & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102

For Blue Hills Fuels, LLC and PMG Northeast, LLC:
Kevin P. Mulry
400 RXR Plaza
Uniondale, NY 11556

Viktoriya Liberchuk
Farrell Fritz, P.C.
13320 RXR Plaza
Uniondale, NY 11556

For Westward Service Station Inc.:
Charles Fred Weil
Law Offices of C. Fred Weil
35 Roosevelt Ave,
Syosset, NY 11791

DENISE COTE, District Judge:

BP Products North America Inc. ("BP") brought this lawsuit to withdraw from a lease of a gas station, as well as an agreement with Westward Service Station, Inc. ("Westward") for Westward to operate the gas station as a franchisee and sublessee.  BP has moved for summary judgment on its claims and on Westward's counterclaims; Blue Hills Fuels, LLC ("BHF"), the owner of the property at issue, has moved for summary judgment on BP's claims; and Westward has moved for summary judgment on BP's claims and its counterclaims.  For the following reasons, each motion is largely denied.

## Background

The following facts are taken from the parties' evidentiary submissions, and are undisputed unless otherwise stated.  In April of 2017, BP entered into a Master Lease Agreement to lease from PMG Northeast, LLC ("PMG")[1] approximately 80 motor fuel stations in New York. Pursuant to the Master Lease Agreement, BP in May of 2017 signed a lease (the "Site Lease") for a property in the Town of Brookhaven, on the corner of Express Drive and Morris Avenue (the "Premises"), in order to run a gas station. On July 10, 2017, BP entered into an agreement (the "Dealer Agreement") for Westward to operate the gas station as a

---

[1] BHF is an affiliate of PMG, and currently owns the relevant property.

franchisee and a sublessee of the Premises.  The Dealer Agreement was later extended to October 31, 2020.

After subleasing the station, BP applied for a permit to rebrand the Premises as a "bp" gas station.  During a meeting to discuss the application, the Town of Brookhaven informed BP of a 2008 letter (the "Letter") from the New York State Department of Transportation ("NYSDOT") addressed to the Town and the former owner of the Premises.  The NYSDOT Letter stated that two of the three curb cutouts leading onto the Premises needed to be removed.  BP then hired an engineering firm, legal counsel, and traffic consultant to attempt to persuade NYSDOT to install a traffic light or otherwise change its decision.  In May of 2020, however, NYSDOT rejected BP's proposals and analyses.

On July 8, 2020, BP notified BHF that it intended to terminate its lease of the Premises pursuant to §§ 11(b) and 18(a) of the Master Lease Agreement, because it could not safely operate a gas station with two of the curb cuts closed.  Section 11(b) of the Master Lease Agreement permits termination if the Premises "cannot be used" as a gas station "whether on account of any zoning or other Governmental Regulation or legal requirement."  Section 18(a) permits termination if there has been a "taking" of the Premises, or a "substantial interference" with the Premises lasting more than five months.  BHF responded to BP's letter, stating that any termination would be considered

3

a breach because NYSDOT had not indicated any intention to
enforce its order to remove the curb cuts, and because BP had
not shown that removing them would actually pose any safety
threat.  The Premises continue to operate as a gas station with
all three curb cuts in place.

On July 8, 2020, BP also notified Westward that it intended
not to renew the Dealer Agreement pursuant to the Petroleum
Marketing Practices Act ("PMPA"), "effective as of the earlier
date of the condemnation" of the Premises "or of the termination
of BP's lease of the Property."  On October 10, BP informed
Westward that its agreement would be terminated as of October
31.

On November 17, 2020, BP brought this action against
Westward, BHF, and PMG, seeking a declaration that it was within
its rights to terminate the Dealer Agreement, a declaration that
it was within its rights to terminate the Site Lease, and
recission of the Site Lease for mutual mistake.  On January 29,
2021, Westward brought counterclaims against BP for breach of
contract and breach of the implied duty of good faith and fair
dealing, seeking a permanent injunction preventing BP from
terminating or refusing to renew the Dealer Agreement, and a
declaration that BP could not terminate the Dealer Agreement.

On May 12, 2022, BP moved for summary judgment on its
claims and Westward's counterclaims.  BHF moved for summary

4

judgment on BP's claims the same day.  On May 13, 2022, Westward
moved for summary judgment on BP's claims and its counterclaims.
BP's motion and BHF's motion became fully submitted on July 6.
Westward's motion became fully submitted on July 15.  The case
was transferred to this Court on August 17.

## Discussion

Summary judgment may only be granted when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "To present a genuine issue of material fact
sufficient to defeat a motion for summary judgment, the record
must contain contradictory evidence such that a reasonable jury
could return a verdict for the nonmoving party."  Horror Inc. v.
Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted).
Material facts are those facts that "might affect the outcome of
the suit under the governing law."  Choi v. Tower Rsch. Cap.
LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  In
considering a motion for summary judgment, a court must
"construe the facts in the light most favorable to the non-
moving party and must resolve all ambiguities and draw all
reasonable inferences against the movant."  Kee v. City of New
York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

Each of the parties argues that it is entitled to summary
judgment in favor of its claims and against its adversaries'

claims.  There remains, however, one dispute of material fact:
whether the Premises can safely be operated as a gas station if
two curb cuts are closed.  Accordingly, summary judgment must be
denied with respect to most of the parties' claims and
counterclaims.

I.   The Site Lease

A. Termination

BP seeks a declaration that it has a right to terminate the
Site Lease pursuant to §§ 11(b) and 18(a) of the Master Lease
Agreement.  There remains a dispute of material fact, however,
as to whether the Site Lease may be terminated because the
Premises "cannot be used" as a gas station.

i.   Use as a Gas Station

Section 11(b) of the Master Lease Agreement allows BP to
terminate a lease if, "due to no act or omission" on its part,
"the Premises cannot be used for the Primary Intended Use,
whether on account of any zoning or other Government regulation
or legal requirement."  The agreement defines the "Primary
Intended Use" as "the operation of a retail automotive fueling
station and convenience store."  Similarly, § 18(a)(iii) permits
termination when there is a "taking or substantial interference
that continues for a period of greater than five (5) months with
any part of the Premises."

There is a dispute of material fact as to whether the
Premises "cannot be used" as a gas station, and whether there
has been "substantial interference" with the Premises.  BP has
introduced an expert report finding that the Premises would not
be safe to operate with only a single curb cut, because fuel
trucks would not be able to pull into the Premises without a
serious risk of collision with curbs, cars, and facilities.
BHF, however, has introduced its own expert report, finding that
a single curb cut would provide safe access to fuel trucks
without more risk or inconvenience than is commonly present at
gas stations.  These dueling expert reports are sufficient to
create a dispute of fact.  See In re Omnicom Group, Inc. Sec.
Litig., 597 F.3d 501, 512 (2d Cir. 2010).  And because BP's
right to terminate under §§ 11(a) and 18(b)(iii) of the Master
Lease Agreement depends on whether it can continue to use the
Premises as a gas station, this dispute is material to its
claims, and therefore precludes summary judgment.

BHF argues that the NYSDOT Letter does not inhibit BP from
operating the Premises as a gas station, because the Letter
lacks the force of law, and because NYSDOT has not initiated or
threatened any enforcement action.  But § 11(b) of the Master
License Agreement permits termination whenever "Government
Regulation" prevents BP from using the Premises as a gas
station.  And the Master License Agreement expansively defines

7

"Government Regulation" to include "all applicable present and future laws, codes and ordinances and other <u>notices</u> requirements orders rules and regulations (whatever the nature thereof) of all federal, state and local governmental authorities" (emphasis added).  This definition is broad enough to include the NYSDOT's requirement that the curb cuts be removed.[2]

BHF also references the DOT's approval for a planned gas station on the Premises in 1974.  That plan included the three curb cuts.  But it is undisputed that the NYSDOT currently maintains that two of the curb cuts must be removed.  The NYSDOT threatened an enforcement action in its 2008 Letter, and submitted a declaration in this action stating that its "directive" requiring closure of the two curb cuts remains in effect.

Finally, BHF argues that neither §§ 11(b) or 18(a) of the Master License Agreement permit termination because BP continues to operate the Premises as a gas station with three curb cuts, and because NYSDOT has not brought or threatened an imminent enforcement action.  But the undisputed facts, including both the NYSDOT Letter and NYSDOT's declaration, show that NYSDOT

---

[2] BHF attempts to rely on a dictionary definition of "regulation" to argue that the NYSDOT Letter does not apply.  But when a contract defines a term, that definition controls.  <u>Cf.</u> <u>Federal Ins. Co. v. Am. Home Assur. Co.</u>, 639 F.3d 557, 568 (2d Cir. 2011) (contractual term "given its ordinary meaning" because the term was "not defined" in the contract).

requires two of the curb cuts to be removed.  The definition of
"Government Regulation" in § 11(b) is broad enough to encompass
the NYSDOT's requirements.  And BHF's interpretation of the
agreement would likely violate public policy by imposing a
contractual obligation to disregard the NYSDOT's directives.
See Prote Contracting Co., Inc. v. Bd. Of Educ. of N.Y.C., 657
N.Y.S.2d 158, 163 (1st Dep't 1997) ("It is well settled that
contracts, although legal in their inducement and capable of
being performed in a legal manner, which nonetheless have been
performed in an illegal manner, will not be enforced.").
Accordingly, BHF has not shown that it is entitled to summary
judgment, as there remains a dispute of material fact as to
whether BP can continue to use the Premises as a gas station.

        ii.   Taking

Section 18(a)(ii) of the Master Lease Agreement states
that, in the event of "any taking of the Premises (or portion
thereof)," BP may terminate the Site Lease.  BP argues that
there has been a taking of the Premises because the NYSDOT
Letter requiring closure of the curb cuts prevents it from using
the Premises as a gas station.

Both the U.S. and New York Constitutions state that private
property shall not be "taken for public use without, just
compensation."  U.S. Const. amend. V; N.Y. Const. art. I § 7(a).
Land-use regulation constitutes a taking of a property per se

when the regulation "denies all economically beneficial or
productive use" of the land.  Murr v. Wisconsin, 137 S. Ct.
1933, 1942 (2017) (citation omitted).  When some beneficial
economic use remains, however, "a taking still may be found
based on a complex of factors, including (1) the economic impact
of the regulation on the claimant; (2) the extent to which the
regulation has interfered with distinct investment-backed
expectations; and (3) the character of the governmental action."
Id. at 1943 (citation omitted); see also Smith v. Town of
Mendon, 4 N.Y.3d 1, 9 (2004).  State action "may so frustrate
distinct investment-backed expectations as to amount to a
taking."  Penn Cent. Transp. Co. v. City of New York, 438 U.S.
104, 127 (1978).

     As described above, there is a disputed issue of fact that
is material to this argument.  It cannot be determined on this
record that the removal of the two curb cuts will prevent use of
the Premises as a gas station.  Accordingly, it is premature and
may be unnecessary to determine whether such an outcome would
constitute a taking.

          B. Mutual Mistake

     BP brings a claim for recission of the Site Lease due to
mutual mistake.  "[A]n agreement may be subject to rescission or
reformation based on a mutual mistake by the parties."  Simkin
v. Blank, 19 N.Y.3d 46, 52 (2012).  To support rescission, the

mistake "must exist at the time the contract is entered into" and must be "so material that it goes to the foundation of the agreement." Id. (citation omitted). A party must bear the risk of mistake, however, if "the risk is allocated to him by agreement of the parties." Dafnos v. Hayes, 694 N.Y.S.2d 42, 44 (1st Dep't 1999) (quoting Restatement (Second) of Contracts § 154(a)).

The doctrine of mutual mistake does not permit rescission here. BP argues that rescission is justified because the parties mistakenly assumed that the Premises could be operated with three curb cuts, and therefore were mistaken in assuming that it could be operated as a gas station. But the Master License Agreement belies this characterization of the parties' assumptions. In particular, as BP has argued, § 11(b) of the Master License Agreement allows BP to terminate the agreement if "Government Regulation" prevents the Premises from being operated as a gas station. Compliance with the law was therefore not an assumption underlying the contract, but a risk that the contract expressly allocated. Accordingly, summary judgment is granted to the defendants on BP's claim for rescission.

II.  PMPA

BP seeks a declaration that the PMPA allows it to terminate or refuse to renew the Dealer Agreement with Westward. The PMPA

11

allows a franchisor to "terminate any franchise" or "fail to renew any franchise relationship" in certain circumstances, including "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect."  15 U.S.C. § 2802(b).  The PMPA provides a non-exhaustive list of such events, including the "condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain."  Id. § 2802(c)(5).

Additionally, the PMPA generally requires that that franchisor provide 90 days' advance notice of termination to the franchisor.  Id. § 2804(a)(2).  This notice must be provided within 120 days of the time when the franchisor acquires "actual or constructive knowledge" of the event justifying termination, unless the franchisor gives less than 90 days' notice, in which case the franchisor must provide notice within 60 days of becoming actually or constructively aware of the event.  Id. § 2802(b)(2)(C)(i)-(ii).

Westward argues that there is no reasonable ground for termination under the PMPA, because the NYSDOT has waived any right to require that curb cuts be removed, because the event purportedly justifying termination did not occur "during the period the franchise [was] in effect," id. § 2802(b)(2)(C), and

because BP did not comply with the PMPA's notice requirements. Each of these arguments is unavailing, and Westward's motion for summary judgment must therefore be denied with respect to BP's claim under the PMPA.  Nevertheless, there remains a dispute of material fact with respect to whether the termination of the agreement was reasonable.  Accordingly, BP's motion for summary judgment on its PMPA claim must be denied as well.

### A. Grounds for Termination

#### i.  Waiver

Westward argues that there is no reasonable ground for termination of the Dealer Agreement under the PMPA, because NYSDOT has waived its right to close the curb cuts.  Westward notes that NYSDOT approved a plan for a gas station that included the curb cuts in 1974 and that, except for its 2008 Letter, NYSDOT has taken no action to enforce its requirement that the curb cuts be removed.

Westward relies on cases involving contractual waivers to support its argument.  See, e.g., Hahnenkamm, LLC v. United States, 147 Fed. Cl. 383, 388–89 (2020); Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 178 (1982).  But NYSDOT is not asserting a right under any contract. Additionally, NYSDOT threatened enforcement action in the Letter, and it continues to maintain that two of the curb cuts on the Premises must be removed.  Accordingly, Westward may not

13

rely on the contractual doctrine of waiver to show that NYSDOT may not enforce its directive regarding the curb cuts.

ii.  Event Justifying Termination

Westward also argues that there are no reasonable grounds for termination because there has been no "condemnation" or "taking" of the Premises, and because regardless, any such condemnation or taking did not occur "during the period the franchise [was] in effect."  15 U.S.C. § 2802(b)(2)(C). Additionally, Westward argues that termination is not permitted under the PMPA because BP had "actual or constructive knowledge" of the issue well before it notified Westward.  Id.

Each of these arguments incorrectly assumes that the "event" justifying termination must be a condemnation or taking. But a condemnation or taking is not required to justify termination -- the PMPA permits termination whenever an event occurs "during the period the franchise is in effect" such that a termination is "reasonable."  15 U.S.C. § 2802(b)(2)(C).  See Russo v. Texaco, Inc., 808 F.2d 221, 225 (2d Cir. 1986) ("[T]he list of events set forth in § 2802(c) was meant to be only illustrative, not exclusive.").  These restrictions on termination are intended to "establish protection for franchisees from arbitrary and discriminatory terminations or nonrenewals."  Nassau Blvd. Shell Serv. Station, Inc. v. Shell Oil Co., 875 F.2d 359, 362 (2d Cir. 1989) (citation omitted).

14

The event on which BP relies to justify termination of the Dealer Agreement is not the NYSDOT's original imposition of the easement requiring closure of the curb cuts, or even the 2008 Letter, but NYSDOT's refusal to modify its order after BP's attempts to negotiate a way to keep the curb cuts.  Construing all facts in favor of BP, as is required when evaluating Westward's motion for summary judgment, this justification provides a reasonable basis for termination of the agreement. BP has introduced evidence to show that three curb cuts are required to safely operate the Premises as a gas station.  Once NYSDOT refused to permit BP to retain the curb cuts, even after having BP's proposed modifications and traffic studies, BP was left with the choice to operate the Premises without NYSDOT's approval, to terminate or decline to renew the Dealer Agreement, or potentially to modify the Premises.  Westward has not shown that it was unreasonable for BP to terminate the agreement.

Additionally, because the event justifying the termination was NYSDOT's refusal to accept BP's proposals, Westward's arguments regarding the timing of the termination notice are unavailing.  The relevant event took place "during the period the franchise [was] in effect", 15 U.S.C. § 2802(b)(2)(C), in May of 2020.  And BP informed Westward of its intent to terminate the agreement on July 8, 2020, within 120 days of becoming actually or constructively aware of this event.  See

15

Id. § 2802(b)(2)(c)(i).[3]  Westward suggests that BP was or should
have been aware of the NYSDOT's requirements earlier, and that
it therefore should have notified Westward earlier of any intent
to terminate.  But, regardless of whether the 2008 Letter or any
other event would have provided grounds for termination,
NYDSOT's rejection of BP's proposals provided an independent
ground for termination that restarted the statutory time limit.
See Wisser Co., Inc. v. Mobil Oil Corp., 730 F.2d 54, 60 (2d
Cir. 1984).  Accordingly, Westward's motion for summary judgment
on BP's claim under the PMPA must be denied.

Because there remains a dispute of material fact, however,
BP's motion for summary judgment on its PMPA claim must be
denied as well.  As explained above, the parties have submitted
conflicting evidence as to whether the Premises can be safely
operated as a gas station with only a single curb cut.
Accordingly, whether NYSDOT's insistence on removing two curb
cuts creates a reasonable ground for termination of the Dealer
Agreement remains a disputed issue of material fact.

B. Notice

Westward argues that BP failed to provide it with 90 days'
advance notice of termination, as required by the PMPA.  15

---

[3] As explained below, § 2802(b)(2)(C)(i)'s 120-day limit applies,
rather than § 2802(b)(2)(C)(ii)'s 60-day limit, because BP
provided more than 90 days' advance notice of termination.

U.S.C. § 2804(a)(2).  On July 8, 2020, BP sent Westward a letter (the "July 8 Letter") stating that it would terminate the Dealer Agreement "effective as of the earlier date of the condemnation" of the Premises "or of the termination of BP's lease of the Property."  The agreement remained in effect until October 31, 2020.  Accordingly, BP provided Westward with more than 90 days' advance notice of termination.

Westward argues that the July 8 Letter did not provide appropriate notice, because it did not specify a date upon which the termination would take place.  15 U.S.C. § 2804(c)(3)(B). But notice under the PMPA does not need to provide a single, exact date of termination, so long as it provides at least one lawful date of termination, and so long as termination does not in fact occur before that date.  See Escobar v. Mobil Oil Corp., 678 F.2d 398, 400 (2d Cir. 1982).  BP's July 8 Letter is consistent with a termination date of October 31, and Westward does not contend that BP in fact terminated the contractual relationship before October 31.  Accordingly, the undisputed facts show that BP complied with the PMPA's notice requirement.

c. Westward's Counterclaims

BP and Westward have each moved for summary judgment on Westward's counterclaims.  Westward has brought five counterclaims: (1) a claim seeking to enjoin BP from terminating or failing to renew the Dealer Agreement, (2) a claim seeking a

declaration that BP cannot terminate the Dealer Agreement, (3) a claim seeking a declaration that BP cannot terminate the Site Lease, (4) a claim for breach of contract, and (5) a claim for breach of the covenant of good faith and fairing dealing.

Summary judgment must be denied to both parties with respect to Westward's first three counterclaims because, as explained above, there remains a dispute of material fact regarding whether BP is permitted to terminate the Site Lease or the Dealer Agreement.  For similar reasons, summary judgment must be denied to both parties on Westward's claim for anticipatory breach of contract, as BP's right to terminate the Dealer Agreement depends on a disputed issue of material fact.

### i.   Preemption

BP argues that the PMPA preempts Westward's fourth and fifth counterclaims.  The PMPA preempts any state law "[t]o the extent that any provision of this subchapter applies to the termination . . . or to the nonrenewal . . . of any franchise relationship" unless "the state law or regulation is the same as the applicable provision" of the PMPA.  15 U.S.C. § 2806(a)(2). BP cites out-of-circuit case law for the proposition that the PMPA preempts causes of action for breach of contract that are "intimately intertwined with the termination or nonrenewal of a franchise."  Shukla v. BP Exploration & Oil, Inc., 115 F.3d 849, 857 (11th Cir. 1997).  The Second Circuit, however, has

interpreted the PMPA's preemption provision to have more "limited effect," preempting only state law "relating to termination or non-renewal", and "only to the extent that the state law is not the same as the corresponding federal act provisions." Darling v. Mobil Oil Corp., 864 F.2d 981, 986 (2d Cir. 1989) (citation omitted).

Here, Westward alleges that BP did not have the right to terminate the agreement because it did not comply with the PMPA's requirements. Westward's breach of contract claim therefore rises and falls with its claim under the PMPA. Accordingly, because Westward's claim for breach of contract does not create a conflict between federal and state law, it is not preempted.

> ii. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, summary judgment must be granted to BP with respect to Westward's fifth counterclaim for breach of the implied covenant of good faith and fair dealing, because it is based on the same conduct as its counterclaim for breach of contract. "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (citation omitted).

Here, Westward's claim for breach of contract and its claim for breach of the implied covenant of good faith and fair dealing are both based on BP's decision to terminate the Dealer Agreement over its purported inability to operate the Premises as a gas station with only one curb cut.  Accordingly, summary judgment on the fifth counterclaim is granted to the plaintiff.

### iii.   Leave to Amend

Westward argues that its claims for breach of contract relate, not just to termination and nonrenewal, but also to misrepresentations from BP and a retaliatory rent increase.  But no such allegations appear in Westward's answer.  Westward therefore seeks to amend its answer to add additional allegations and plead causes of action that have arisen since the onset of the litigation.

In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).[4]  Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98

---

[4] BP argues that the pleadings have been closed under its proposed case management plan and scheduling order.  The Court, however, never adopted BP's proposal, and never set a deadline by which any amendments had to be submitted.  Accordingly, the standard for leave to amend is governed by the standard of Fed. R. Civ. P. 15(a)(2), not by the "good cause" standard Fed. R. Civ. P. 16(b)(4).

(2d Cir. 2019) (citation omitted).  Accordingly, a district
court "plainly has discretion to deny leave to amend where the
motion is made after an inordinate delay, no satisfactory
explanation is made for the delay, and the amendment would
prejudice the defendant."  <u>MacDraw, Inc. v. CIT Group Equip.</u>
<u>Fin., Inc.</u>, 157 F.3d 956, 962 (2d Cir. 1998) (citation omitted).

Westward has not shown that it is entitled to amend its
counterclaims.  Westward filed its counterclaims on January 29,
2021.  It first requested leave to amend in its opposition to
BP's motion for summary judgment on June 15, 2022 -- nearly a
year and a half later, and four months after the close of
discovery.  Westward has not argued that its new allegations
arose recently, nor has it provided any other justification for
this delay.  Accordingly, leave to amend must be denied due to
Westward's undue delay, and the prejudice this delay would cause
to BP if discovery and motion practice had to restart on new
allegations.

## Conclusion

BP's May 12, 2022 motion for summary judgment is granted
with respect to Westward's counterclaim for breach of the
implied warranty of good faith and fair dealing, but otherwise
denied.  The defendants' May 12, 2022 and May 13, 2022 motions

for summary judgment are granted with respect to BP's claim for recission due to mutual mistake, but otherwise denied.

Dated:      New York, New York
            October 28, 2022

                              _____
                                   DENISE COTE
                        United States District Judge